UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Arthur H. Bunte, Jr., a Trustee thereof, in his representative capacity, | : : : : : : : | Civil Action No. 13-2760 (SRC) |
| Plaintiffs, | : : | OPINION |
| v. | : : | |
| BOLLINGER, INC., MONUMENTAL LIFE INSURANCE COMPANY, and MARKEL INSURANCE COMPANY, | : : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendants Bollinger, Inc. ("Bollinger"), Monumental Life Insurance Company ("Monumental") and Markel Insurance Company ("Markel") (collectively, "Defendants") to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Fund") and its trustee Arthur H. Bunte (collectively, "Plaintiffs") have opposed the motion. The Court has considered the papers filed by the parties, and for the reasons that follow, grants Defendants' motion. The four claims pled in the Complaint will be dismissed, but Plaintiffs will be granted leave to file an Amended Complaint consistent with the Court's discussion below.

1

I.  **BACKGROUND**

The Fund is an multi-employer trust fund which provides an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  It provides medical coverage for employees who are members of the Teamsters union as well as their eligible family members pursuant to the Central States Health and Welfare Fund Plan Document (the "Plan").  This lawsuit arises out of the Fund's payment of medical claims for accidental injuries sustained by 19 individuals who, at the relevant time, were covered by the Plan and also by an insurance policy issued by either Defendant Monumental or Markel.  The Court will refer to these claims paid by the Fund to the 19 beneficiaries identified in the Complaint as the "underlying accident claims."  The other named Defendant, Bollinger, was engaged by both Monumental and Markel as a third party administrator ("TPA") of claims and, according to the Complaint, acted as the TPA for the underlying accident claims.

The Plan contains a coordination of benefits ("COB") provision, which provides that if benefits under the Plan overlap with benefits provided by an "Other Plan," the Other Plan will have primary responsibility. Compl. ¶ 22.  The Plan further provides that where it does not have primary responsibility, the Plan pays covered charges after the Other Plan has paid its maximum allowable benefits.  Id., ¶ 24.  The Complaint alleges that, because the underlying accident claims were covered by both the Plan and an "Other Plan" – i.e., a Monumental or Markel insurance policy – the Plan's COB provision required that Monumental or Markel bear primary liability for the underlying accident claims.  The Complaint further alleges that, nevertheless, Monumental and/or Markel failed or refused to pay the underlying accident claims.  Plaintiffs aver that, to avoid financial hardship to Plan beneficiaries, the Fund paid the covered medical

expenses on the underlying accident claims, paying in excess of its responsibility as the provider of secondary coverage under the terms of the COB provision. According to the Complaint, Defendants have refused to reimburse the Fund for amounts it overpaid.

The Fund and its trustee have instituted this lawsuit pursuant to their right, under the Plan, to recover $194,212.25 in overpaid benefit amounts "from any responsible persons or entities." Compl., ¶¶ 21, 25, 66. The Plan provides that the Fund, through its trustee, may file suit to recover such payments from any persons receiving the payments or from any Other Plans having primary responsibility for the payment of benefits. The Complaint was filed in this Court on the grounds that it has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

The Complaint contains four counts. Plaintiffs seek restitution, pursuant to ERISA § 502(a)(3), from Bollinger, Monumental and Markel of the covered medical expenses the Fund contends it overpaid to its beneficiaries under the Plan COB provision (Count III). The Complaint further requests, pursuant to ERISA § 502(a)(3), that the Court enforce an equitable lien against the sums in Defendants' possession which the Fund alleges Defendants were required to pay on the underlying accident claims but did not (Count IV). The Fund also asserts two claims for declaratory judgment and injunctive relief, declaring the COB provisions enforceable against Defendants and requiring them to pay past, present and future medical expenses associated with the underlying accident claims covered by both the Plan and Defendants' policies and paid by the Fund (Counts I and II).

## II. DISCUSSION

### A. Standard of Review

A complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) Following Iqbal and Twombly, the Third Circuit has held that, to prevent dismissal of a claim, the complaint must show, through the facts alleged, that the plaintiff is entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). While the Court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff, it need not accept a "legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007); Fowler, 578 F.3d at 210-11; see also Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice." Iqbal, 556 U.S. at 678.

### B. Viability of Plaintiffs' Claims under ERISA § 502(a)(3)

Plaintiffs assert the cause of action created by ERISA § 502(a)(3) as the basis to recoup the sums they claim they overpaid to their beneficiaries, be it by restitution (Count III), imposition of an equitable lien and constructive trust relating to the overpaid amounts (Count

IV), or injunction ordering Defendants to reimburse Plaintiffs (Count II).  It also provides the basis for their claim to declaratory and injunctive relief regarding as-yet unpaid and/or future benefit amounts relating to the underlying accident claims (Count I).  ERISA § 502(a)(3) states, in relevant part, that a civil action may be brought

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . .

29 U.S.C. § 1132(a)(3).

The parties agree that ERISA § 502(a)(3) authorizes an ERISA plan fiduciary, such as Plaintiffs, to seek only *equitable* relief to enforce the terms of a Plan.  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209-210 (2002) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 257-58 (2002)).  Indeed, the Supreme Court has consistently held that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were typically available in equity . . . .'" Id. at 210 (quoting Mertens, 508 U.S. at 256); see also CIGNA Corp. v. Amara, 131 S.Ct. 1866, 1878 (2011).   The corollary of this statutory interpretation by the Supreme Court is that legal relief, such as the imposition of personal liability against a defendant for a sum of money that the defendant is obligated to pay under a contract, is not available under § 502(a)(3).  Knudson, 534 U.S. at 210; Amara, 131 S.Ct. at 1878.  The parties disagree, however, as to whether the relief sought by Plaintiffs falls into the category of equitable or legal.  The viability of Plaintiffs' four claims turns on that question.  To resolve it, the Court must look to the basis upon which the Fund claims that Defendants are obligated to reimburse it for benefits paid on the underlying accident claims.

5

The Court begins with an analysis of Plaintiffs' claim for restitution, as the core of this action is Plaintiffs' averred overpayment of almost $200,000 in benefits. The label "restitution" does not necessarily denote that the Fund is asserting a right grounded in equity. Knudson, 534 U.S. at 212-13. The Supreme Court explained that typically, a plaintiff could seek enforcement of an equitable obligation of restitution "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." Id. at 213. Thus, it held in Knudson that "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 214. In this case, the Fund asserts that it paid its beneficiaries in excess of the benefit amount to which they were entitled under the Plan and seeks to recover the allegedly overpaid benefit amounts from the insurers they contend are primarily responsible to pay the underlying accident claims. Plaintiffs do not contend that the Fund paid to Defendants, or that the Defendants otherwise received, some particular, traceable money as a result of the alleged violations of the Plan's COB provisions. Cf. Sereboff v. Mid Atlantic Med. Svcs., Inc., 547 U.S. 356, 363 (2006) (permitting an ERISA plan fiduciary to maintain action under § 502(a)(3) to recover from plan beneficiaries amounts plan paid for their medical expenses because, unlike the situation in Knudson, the fiduciary sought to recover a specifically identified fund – the proceeds of the beneficiaries' settlement with a third-party tortfeasor – over which the fiduciary could claim an equitable lien pursuant to plan terms). Though they can quantify the alleged overpayment, Plaintiffs do not seek the return from Defendants of any identifiable monies in the Defendants' possession. Instead, Plaintiffs claim that Defendants owe them a certain amount, essentially compensation,

for their failure to honor the Plan's COB provisions and plead for such payment from Defendants' assets generally. In other words, though Plaintiffs ask for restitution, they are in fact seeking to hold Defendants personally liable for the benefit amounts that they allegedly should have paid to the beneficiaries on the underlying accident claims. The nature of the asserted "restitutionary" obligation is therefore legal, and not equitable, in nature.

The related § 502(a)(3) claim for the Court to enforce an equitable lien and impose a constructive trust on those assets of Defendants representing the amounts the Fund contends it overpaid to beneficiaries fails for the same reasons. The Complaint alleges that the Fund holds a lien over Defendants' assets in the amount of underlying accident claims that have been paid or will be paid by the Fund and further alleges that it has filed notice of liens on Bollinger, the TPA, to assert its lien rights. Missing from the Complaint, however, is any indication of the source of Plaintiffs' claim to entitlement over Defendants' assets, that is, a basis for the lien. Cf. US Airways, Inc. v. McCutchen, 133 S.Ct. 1537, 1546-47 (2013) (holding that an ERISA plan fiduciary, bringing action under ERISA § 502(a)(3), could enforce a lien on monies received by the beneficiary from a third party tortfeasor, reasoning that the lien would serve to hold the fiduciary and beneficiary to their mutual promises pursuant to the governing ERISA plan document).

Plaintiffs argue that like the lien by agreement found to exist by virtue of provisions in the applicable ERISA plan document in the Supreme Court decisions in Sereboff and McCutchen, a lien on the overpaid amounts at issue in this case was created by the Plan's COB provision. They point out that the COB provision not only sets the order of priority for paying claims when an "Other Plan" provides coverage but also entitles the Plan trustee to recover any

7

amounts overpaid by the Plan from any responsible party, including the "Other Plan." They maintain that every time the COB provision was not honored by Defendants, and the Plan paid benefits that should have been paid by Monumental or Markel, Defendants "came into constructive possession of funds which belong to [the Fund]" and essentially became trustees. (Opp'n Br. at 8-9.)

Plaintiffs' reliance on Sereboff and McCutchen, in which § 502(a)(3) claims to recover plan benefits paid to a beneficiary were found sustainable, is misplaced. Their lien-by-agreement argument disregards fundamental differences between this case and the facts presented in Sereboff and McCutchen. In those cases, the ERISA plan itself contained a provision requiring the beneficiary to reimburse the plan on claims paid from amounts the beneficiary recovered from third parties related to the underlying claim. Sereboff, 547 U.S. at 359; McCutchen, 133 S.Ct. at 1543. Thus, in each case the applicable plan was found to give the fiduciary a claim of entitlement to payments that were received by the beneficiary from a third party, in other words, a lien by agreement. Sereboff, 547 U.S. at 368; McCutchen, 133 S.Ct. at 1546. The plan fiduciary in Sereboff and McCutchen sought to enforce those plan terms against the beneficiary by seeking recovery of specific, identifiable assets in the beneficiary's possession. Sereboff, 547 U.S. at 362-63; McCutchen, 133 S.Ct. at 1543-44. In this § 502(a)(3) action, Plaintiffs point to no Plan provision that creates a lien on the property of insurance companies or TPAs or explain how such a provision could be enforced as a matter of equity against entities that are not even parties to the Plan. And, to reiterate a critical fact underscored in the restitution discussion above, Plaintiffs do not allege that Defendants came into possession of specific, identifiable assets belonging to Plaintiffs. In other words, assuming all facts in the

Complaint to be true, even if the Funds paid in excess of the Plan obligation, there is no property over which to impose the constructive trust Plaintiffs seek.

Their reliance on the Supreme Court's decision in CIGNA Corp. v. Amara is similarly misplaced.  There, in an action brought by pension plan beneficiaries under § 502(a)(3) seeking redress after the plan was changed to reduce benefits, the Supreme Court held that equitable remedies were available because it concerned a suit by a beneficiary "against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)." Amara, 131 S.Ct. at 1879.  Thus, the Amara Court concluded that, although the relief took the form of a money payment, the fiduciary relationship between the parties, and the fact that the payment would be designed to remedy alleged misconduct by a trustee, rendered the relief equitable in nature.  Id. at 1880.  In contrast, no such fiduciary relationship between the Fund and Bollinger, Markel and/or Monumental is alleged to exist, and thus Plaintiffs' insistence on a constructive trust held by Defendants lacks any factual basis in the Complaint or the Plan documents referenced therein.

Rather, the facts of this case are analogous to those considered by the Third Circuit in Sackman v. Teaneck Nursing Center, in which the court held that the relief sought by the trustees of a multiemployer benefit plan to recoup benefit payments that should have been paid by another ERISA benefits plan was not equitable and therefore concluded that the action was not authorized by § 502(a)(3).  Sackman v. Teaneck Nursing Ctr., 86 F. App'x 483 (3d Cir. 2003).  In Sackman, employees of the defendant Teaneck Nursing Center had been covered by an ERISA-qualified multi-employer health benefits plan, pursuant to the terms of a collective bargaining agreement ("CBA").  Id. at 484.  Although the defendant employer replaced the

9

multi-employer plan with its own self-funded benefits plan, as it was entitled to do under the CBA, some employees continued to submit claims to the multi-employer plan for months after the new self-funded plan had taken effect. Id. The multi-employer plan paid thousands of dollars in claims that should have been covered by the self-funded plan and then filed suit against Teaneck pursuant to ERISA § 502(a)(3) in the United States District Court for the District of New Jersey seeking to recover the amount of claims paid under a theory of unjust enrichment. Id. Expressly relying on the Supreme Court's decision in Knudson and applying the principles articulated in that case, the Third Circuit held in Sackman that the plaintiff multi-employer plan had no cognizable claim under § 502(a)(3) because the relief it sought from the self-funded employer plan was not equitable. Id. at 485. The Sackman court reasoned as follows:

> Here, the Fund seeks to recover the amount that it paid on medical claims submitted by Teaneck employees over a period of eight months. The trustees do not identify a specific block of money that passed from the Fund to Teaneck; rather, they seek to impose a form of "personal liability" on Teaneck based on what is essentially an implied contract for services the Fund allegedly rendered, and benefits received by Teaneck. The Fund contends that it conferred a benefit on Teaneck when it paid employee medical claims that would have been paid by Teaneck, had they been submitted under the new plan, and that compensation for that benefit is due. This is essentially a form of restitution that was traditionally available only at law. Thus, under *Great-West*, the trustees of the Fund may not assert a cause of action under § 1132(a)(3), as the relief that they seek is legal relief, not "other appropriate equitable relief."

Id.

As in Sackman, the Plaintiffs here aver that another medical benefits provider should have paid all, or at least some portion, of the underlying accident claims submitted to the Plaintiff Plan and seek recoupment of those benefit amounts paid by the Plan from the other insurance provider. The Third Circuit's opinion in Sackman, while not precedential, provides a

sound analysis of § 502(a)(3) which is directly applicable to this case. Plaintiffs, as set forth above, do not identify a specific block of money that passed from the Fund to Monumental or Markel. Rather they seek to hold Defendants personally liable for their alleged obligation to pay the underlying accident claims. Plaintiffs here essentially claim money damages for Defendants' alleged non-compliance with a legal obligation, not restitution of identifiable funds in Defendants' possession. Apart from the absence of identifiable property over which Plaintiffs could claim equitable interest, the factual situation presented in the Complaint before the Court lacks a basis for creation of a lien or constructive trust. Plaintiffs have not presented a claim grounded in equity, and accordingly their causes of action under § 502(a)(3) must be dismissed.

      Plaintiffs cannot, moreover, avoid the restrictions of § 502(a)(3) by pleading for recovery of the allegedly overpaid and/or future benefit amounts under a theory of injunctive or declaratory relief, as they attempt to do in Counts I and II of the Complaint. Plaintiffs ask that the Court declare that Monumental and Markel have primary responsibility for paying all paid, unpaid and future covered medical expenses relating to the underlying accidents, issue injunctions requiring Defendants to reimburse the Fund for payments already made and issue injunctions enjoining Defendants from violating the Plan's COB provisions. These claims, though presented in terms designed to invoke the equitable remedies available under § 502(a)(3), at bottom seek the kind of legal relief flowing from enforcement of a contractual obligation. The Supreme Court clearly held in Knudson that a request for money owed under a contract cannot be transformed into an equitable remedy simply by recasting the claim as one for an injunction to compel payment. Knudson, 534 U.S. at 211-12. Noting that although an injunction can be an appropriate equitable remedy under § 502(a)(3), the Court observed that "the statutory reference

to that remedy must, absent other indication, be deemed to contain the limitations upon its availability that equity typically imposes. Without this rule of construction, a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." Id. at 211 n. 1. Thus, the Knudson Court rejected the plaintiff plan's claim under § 502(a)(3) to enjoin the defendant beneficiaries from violating the plan by failing to reimburse the plan. Id. at 211-12. Similarly, this Court must reject Plaintiffs' attempt to obtain relief under § 502(a)(3) by re-characterizing the claim for reimbursement, which lacks an equitable basis, into a claim to enjoin violation of the Plan through a failure to pay.[1]

The Court notes that the United States District Court for the Northern District of Texas considered an almost identical set of facts and legal claims in a pair of opinions deciding motions to dismiss the § 502(a)(3) claims brought by the same Fund that is the Plaintiff to this case. See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Health Special Risk, Inc., No. 3:11-CV-2910-D, 2012 WL 1570981, at *1 (N.D. Tex May 4, 2012); Central States, Southeast and Southwest Areas Health and Welfare Fund v. Health Special Risk, Inc., No. 3:11-CV-2910-D, 2012 WL 5006054, at *1 (N.D. Tex. Oct. 18, 2012). In that action, which the Court will refer to as the "Texas action," the Fund had filed a complaint and then an amended complaint against various insurance companies and a TPA alleging that the defendant insurers

---

[1] The Court notes that Plaintiffs argue in the alternative that, should this Court determine that the claims for injunctive and declaratory relief are not cognizable under ERISA § 502(a)(3), the Court may invoke federal common law to fashion a remedy in light of the gap left by ERISA for plans to recover overpaid amounts where there is no equitable basis to do so. Plaintiffs provide no binding authority for the Court to create such a remedy. Indeed, Defendants point out that such a request to fill a gap in ERISA's remedial scheme was squarely rejected by the Fifth Circuit. See Cooperative Benefit Admins. v. Ogden, 367 F.3d 323, 332 (5th Cir. 2004) (holding that because § 502(a)(3)(B) expressly limits a plan fiduciary's right to sue for equitable relief only, "there is no 'gap' in ERISA on this question and thus no basis for granting [the fiduciary] a federal common law remedy.").

were primarily responsible to pay certain claims under the applicable plan's COB provisions and asking for recovery of the allegedly overpaid amounts. See 2012 WL 1570981, at *1. The district court in the Texas action reached the same conclusions as those discussed in this Opinion, specifically that the relief sought by the Fund was not equitable and therefore, pursuant to Knudson and its progeny, the Fund's § 502(a)(3) claims for restitution and its related claims for declaratory and injunctive relief were not viable.[2] Id. at *3-4; 2012 WL 5006054, at *3-4.

The Complaint before the Court cannot survive this Rule 12(b)(6) challenge. The Third Circuit has instructed, however, that upon granting a defendant's motion to dismiss a deficient complaint, a district court should grant the plaintiff leave to amend within a set period of time, unless amendment of the complaint would be inequitable or futile. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002). This Court will accordingly permit the Plaintiffs to file an Amended Complaint asserting any claim or claims for relief they believe would be viable, on the condition that the Amended Complaint adequately states that this Court has a basis for federal subject matter jurisdiction.

---

[2] In its opinion on the motion to dismiss the amended complaint, the court in the Texas action did allow a state law subrogation claim to proceed so long as the plaintiff could demonstrate that there was a basis for the court to exercise federal subject matter jurisdiction based on diversity of citizenship. See 2012 WL 5006054, at *6. However, upon motion for reconsideration of that portion of the ruling, the court concluded that the subrogation claim was conflict preempted under ERISA and dismissed the entire action with prejudice. See 2013 WL 2656159, at *7 (N.D. Tex. June 13, 2013).

**III.    CONCLUSION**

The Court grants the motion to dismiss the Complaint.  Plaintiffs will, however, be granted leave to file an Amended Complaint, as discussed above.  Should Plaintiffs fail to file an Amended Complaint, providing proper support for the existence of federal subject matter jurisdiction, within 30 days of the accompanying Order, the Court will mark this case closed.

                                            s/ Stanley R. Chesler
                                            STANLEY R. CHESLER
                                            United States District Judge

Dated:  August 22, 2013